## UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VIKKI L. MORGAN, | ) |
|         PLAINTIFF, | ) |
| vs. | )   CASE No. 06-CV-425-FHM |
| MICHAEL J. ASTRUE,<br>Commissioner of the<br>Social Security Administration,[1] | ) |
|         DEFENDANT. | ) |

### ORDER

Plaintiff, Vikki L. Morgan, seeks judicial review of a decision of the Commissioner of the Social Security Administration denying Social Security disability benefits.[2] In accordance with 28 U.S.C. § 636(c)(1) & (3) the parties have consented to proceed before a United States Magistrate Judge.

The role of the Court in reviewing the decision of the Commissioner under 42 U.S.C. § 405(g) is limited to determining whether the decision is supported by substantial evidence and whether the decision contains a sufficient basis to determine that the Commissioner has applied the correct legal standards. *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996); *Castellano v. Secretary of Health & Human Servs.,* 26 F.3d

---

[1] On February 1, 2007, Michael J. Astrue was confirmed as Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Michael J. Astrue is substituted for Jo Anne B. Barnhart the former Commissioner, as defendant in this case. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Plaintiff's June 1, 2001 applications for disability insurance and widow's benefits were denied initially and upon reconsideration. Two hearings before an Administrative Law Judge (ALJ) were conducted. By decision dated March 27, 2003, the ALJ entered the findings which are the subject of this appeal. The Appeals Council denied review of the findings of the ALJ on June 19, 2006. The action of the Appeals Council represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

1027, 1028 (10th Cir. 1994). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Doyal v. Barnhart*, 331 F.3d 758 (10th Cir. 2003). The Court may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *See Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005). Even if the Court might have reached a different conclusion, if supported by substantial evidence, the Commissioner's decision stands. *White v. Barnhart*, 287 F.3d 903, 908 (10th Cir. 2002).

Plaintiff was born October 25, 1951, and was 51 years old at the time of the Decision. [R. 55, 532, 562]. She claims to have been unable to work since March 1, 2000, due to pain caused by osteoarthritis, pain in her feet due to plantar fascitis, bunions and heel spur syndrome, degenerative joint disease (DJD), heart problems, hypothyroidism, asthma, memory problems, depression and chronic pain syndrome. [R. 73, 81, 94, 533, 534, 537-540, 565-569, 585]. The ALJ determined that Plaintiff has severe impairments consisting of osteoarthritis, plantar fascitis and asthma. [R. 25]. The ALJ found that, despite these impairments, Plaintiff retains the residual functional capacity (RFC) to lift and/or carry 50 pounds occasionally or 20 pounds frequently; with normal breaks that she can sit, stand or walk 6 hours during an 8-hour workday; can use her hands and feet and could climb, balance and kneel on a frequent basis; and that she would need to work in a reasonably clean air environment because of her asthma. [R.27]. Based upon the testimony of a Vocational Expert (VE), he found Plaintiff could return to her past relevant work as a receptionist, secretary, cashier, customer service representative, business development manager, waitress and tour

reservationist with this RFC. [R. 27]. Alternatively, the ALJ determined there is other work in the economy that Plaintiff could perform with this RFC and concluded, therefore, that Plaintiff is not disabled as defined by the Social Security Act. [R. 27-28]. The case was thus decided at step four, with an alternative finding at step five, of the five-step evaluative sequence for determining whether a claimant is disabled. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005) (describing the five steps); *Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (discussing five steps in detail).

Plaintiff asserts the ALJ committed the following errors: 1) that he did not perform a proper evaluation of the treating physician's opinion; 2) that he did not make a proper determination at steps two and three; 3) that he failed to perform a proper credibility determination; and 4) that he failed to include all Plaintiff's limitations in his hypothetical to the vocational expert at steps four and five. For the following reasons, the Court finds this case must be reversed and remanded to the Commissioner for reconsideration.

## Medical Treatment Records

The medical record in this case is voluminous and contains treatment records from as far back as 1978. [R. 368-392]. The most recent medical evidence in the record is dated April 4, 2006. [R. 446-448]. Plaintiff's alleged disability onset date is March 1, 2000. [R. 55]. The ALJ's decision denying benefits was entered on March 27, 2003. [R. 23-29]. Although the entire medical record has been reviewed, the Court limits its discussion of the medical evidence to the treatment records covering the time

period between January 2000, shortly before Plaintiff's claimed disability date, to July 2003, shortly after the ALJ's decision.

Plaintiff saw her general care practitioner, Daniel C. Martin, D.O., in January and April 2000, with soreness in her arms and bilateral foot pain among her complaints. [R. 206]. Dr. Martin diagnosed plantar fascitis[3] and referred Plaintiff to Maureen L. Crotty, D.P.M., for treatment. *Id.* On July 11, 2000, Dr. Crotty diagnosed heel spur syndrome with plantar fascitis bilaterally, bunion deformity with the left being more severe than the right and capsulitis. [R. 135]. Conservative treatment was commenced by placing Plaintiff in orthopedic strapping, performing posterior muscle group stretches and discussion of appropriate shoes with a plan for orthotics to be prescribed afterward. Dr. Crotty advised Dr. Martin that additional therapy such as injections, anti-inflammatory medications and physical therapy may be required and that, most likely, Plaintiff will require surgical intervention for the bunion deformity in the future. *Id.* On June 4, 2001, Dr. Crotty reported to Dr. Martin that Plaintiff could not afford orthotics and that new stabilizers were fashioned for her to replace the worn-out strapping. [R. 134].

Plaintiff was seen by Dr. Martin during the following two years for various other medical problems, including chest pain, fatigue, muscle pain and arthritis for which he prescribed Vioxx.[4] [R. 118-129, 155-167, 182-204]. During that time span, Dr. Martin

---

[3] The plantar fascia is a very thick band of tissue that covers the bones on the bottom of the foot. Plantar fascitis is irritation and swelling of the fascia making walking more difficult. Bone spurs in the heel can accompany plantar fascitis, but are generally not the source of the pain. See medical information online: http://www.nlm.nih.gov/medlineplus/ency/article/007021.htm

[4] Vioxx is a COX-2 selective nonsteroidal anti-inflammatory drug (NSAID) used to relieve signs and symptoms of arthritis. See drug info online: http://www.fda.gov/cder/drug/infopage/vioxx.htm

4

referred Plaintiff to Timothy L. Huettner, M.D., a Rheumatologist. [R. 131-132]. On March 29, 2001, Dr. Huettner diagnosed degenerative joint disease (DJD) and right elbow lateral epicondylitis[5] and prescribed Celebrex.[6] [R. 131]. He saw Plaintiff in follow-up through July 12, 2001, reporting to Dr. Martin on that date that Plaintiff was feeling worse and that she could not take the Celebrex on a daily basis because of nausea and heartburn. [R. 362, 130, 304].

Plaintiff's treating physician for asthma related problems from August 2000 to February 2003 was James D. Seebass, D.O., who oversaw her attempts to gradually decrease her Prednisone dosage. [R. 117, 335-338, 417-420]. Dr. Martin was copied on the reports generated for Dr. Seebass. *Id.* Plaintiff was treated at Claremore Indian Hospital on May 15, 2002, for injuries she sustained in a fall. [R. 278].

On June 24, 2002, Dr. Martin was asked by Plaintiff to "go over forms for SSA." He examined Plaintiff and reviewed her treatment records from Dr. Huettner.[7] [R. 300]. He wrote the following letter "To Whom It May Concern:"

> Vikki L. Morgan has chronic problems with asthma, plantar fascitis, and arthritis.

---

[5] Epicondylitis, also called tennis elbow is an inflammation, soreness, or pain on the outside (lateral) side of the upper arm near the elbow. There may be a partial tear of the tendon fibers, which connect muscle to bone, at or near their point of origin on the outside of the elbow. This injury is due to repeated motions of the wrist or forearm. The injury is typically associated with tennis playing, hence the name "tennis elbow." However, any activity that involves repetitive twisting of the wrist (like using a screwdriver) can lead to this condition. See medical information online: http://www.nlm.nih.gov/medlineplus/ency/article/000449.htm

[6] Celebrex is an NSAID anti-inflammatory used to relieve symptoms of osteoarthritis. See drug information online: http://www.fda.gov/cder/drug/infopage/celebrex/celebrex-ptsk.htm

[7] Dr. Martin noted Plaintiff had stopped seeing Dr. Huettner because of cost. [R. 300].

> She experiences significant pain, stiffness and swelling of the small joints of both hands with pain radiating into her wrists and elbows. The grip strength in her hands is weak and she experiences pain when trying to grip. She should avoid reaching and limit her reaching and lifting to 10 pounds only occasionally (less than 1/4th of the day).
>
> Vikki suffers with pain and swelling in her ankles and feet. She has pain going all the way from the right ankle to the right knee and along the right lateral thigh up into the right posterior buttock. The pain is worse with prolonged sitting, standing, walking, bending and is progressive through the day. She has hallux valgus on the left side. She experiences weakness in both ankles causing her to fall 2 or 3 times a month. She would not be able to work a full 8 hour work day without having to elevate her legs several times during the day for 1-2 hours at a time to relieve pain and swelling.

[R. 301].[8]

Dr. Martin's treatment records continue through February 2003 and in July 2003, just three months after the ALJ entered his decision denying benefits, Dr. Martin referred Plaintiff for another rheumatologic evaluation for worsening arthritis. [R. 330-333, 340-347, 501-503].

## Consultative Medical Reports

On September 2, 2001, Dennis A. Rawlings, Ph.D., examined Plaintiff on behalf of the Social Security Administration. [R. 139-145]. He noted in the history given by Plaintiff that she had quit her job as a receptionist/secretary/customer representative due to memory problems, reporting that she could not recall a phone message long enough to write it down while she was handling the next call. [R. 139]. He conducted

---

[8] Hallux valgus, a bunion, forms when the big toe points toward the second toe causing a bump on the edge of the foot, at the joint of the big toe. See medical information online: http://www.nlm.nih.gov/medlineplus/ency/article/001231.htm

a mental status exam, including attention span testing, judgment questions and motor activity observations. [R. 142]. He wrote:

> Vikki's capacity to understand, retain and follow simple instructions, and pay attention and perform simple tasks, appears intact.  For more complicated tasks, her performance today did match her description of memory problems on her last job. In terms of her ability to tolerate stress associated with competitive work, impairment seems to be related to her physical difficulties and chronic pain.

[R. 143]. Dr. Rawlings recommended a Wexler memory scale III exam and continuation of medical treatment. [R. 143]. He diagnosed: Pain disorder associated with both psychological factors and multiple general medical conditions, chronic; Amnestic disorder NOS; Other substance-induced mood disorder due to Prednisone withdrawal, physician-induced and he assigned a GAF score of 50.[9] [R. 143-144].

The record contains a Psychiatric Review Technique form (PRT) signed on September 19, 2001, by Ron Smallwood, Ph.D., a non-examining medical expert.[10] [R. 169-180, Supplemental Transcript (Dkt. 30)]. The physician assessed "Impairment(s) Not Severe" in the category for Listing 12.02, Organic Mental Disorders. [R. 169].[11]

---

[9] "The GAF is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.' American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) [DSM-IV-TR] at 32.... A GAF score of 41-50 indicates '[s]erious symptoms ... [or] serious impairment in social, occupational, or school functioning,' such as inability to keep a job. *Id.* [at 34]." *Langley v. Barnhart,* 373 F.3d 1116, 1122 n.3 (10th Cir.2004),

[10] In the case of mental impairments, the severity of an applicant's mental impairments must be rated using the procedures described in 20 C.F.R. § 416.920a(c); *Washington v. Shalala*, 37 F.3d 1437 (10th Cir.1994).

[11] The listings set out at 20 C.F.R. Pt. 404, Subpt. P, App. 1, are descriptions of various physical and mental illnesses and abnormalities, most of which are categorized by the body system they affect.

"Memory impairment" was checked as the factor that evidenced the disorder under the "A" criteria.[R. 170].[12] Dr. Smallwood assigned mild limitations under the "B" criteria of "Restriction of Activities of Daily Living" and "Difficulties in Maintaining Social Functioning." [R. 177B, Dkt. 30, p. 3]. For "Difficulties in Maintaining Concentration, Persistence, or Pace" and "Repeated Episodes of Decompensation, Each of Extended Duration," he indicated "none." *Id.*

Angelo Dalessandro, D.O., conducted a physical examination of Plaintiff on behalf of the agency on November 15, 2001. [R. 147-153]. He noted the presence of a left bunion, tenderness on medial and lateral aspects of both knees, on the lateral aspect of the left ankle, on the medial and lateral condyles of both elbows, over the right greater trochanteric area,[13] in the right lumbodorsal area and in the plantar area of the left heel. He observed that Plaintiff could heel-and-toe walk on the right and that she did have a weak left heel walk but a normal left toe walk. [R. 148-149]. He assessed: Left heel spur; Osteoarthritis; Hypothyroidism; Asthma by history and Exogenous obesity. [R. 149].

On August 26, 2002, Plaintiff was examined and evaluated by John W. Hickman, Ph.D., a clinical psychologist. [R. 311-317]. Dr. Hickman administered the Wechsler Memory Scale-Revised, the Delayed Recall Test, the Mental Status Exam, the Symptom Checklist-90-Revised and the McGill Pain Questionnaire. [R. 312]. As to her

---

[12] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00 Mental Disorders; § 12.02 A(2).

[13] One of the bony prominences toward the near end of the thigh bone (the femur), the point at which hip and thigh muscles attach. The greater trochanter gives attachment to a number of muscles (including the gluteus medius and minimus, piriformis, obturator internus and externus, and gemelli muscles). See medical definitions online: http://www.medterms.com/script/main/art

level of functioning, Dr. Hickman said Plaintiff's reports of difficulties with concentration and memory were not supported by her mental status examination, that she was not evidencing any significant cognitive deficits, but that she appeared to have some blocking to her thought processes and difficulty retrieving information at times, which appeared to be secondary to her depression. [R. 314].  He diagnosed: Axis I: Pain disorder with psychological and medical factors, Depressive disorder; Axis II: Features of a histrionic personality disorder; Axis III: Osteoarthritis, asthma, plantar fascitis; Axis IV: Mild psychosocial stress; Axis V: GAF - 65, mild to moderate emotional discomfort. [R. 314].  Dr. Hickman thought there was a psychological component to Plaintiff's perception of pain and disability that had functional and secondary gain value. *Id.*  He filled out a Mental Medical Source Statement indicating no significant limitations in all the mental activities listed on the form. [R. 315-317, Supplemental Transcript Dkt. 19].

On September 6, 2002, Plaintiff was evaluated by Subramaniam Krishnamurthi, M.D., on behalf of the agency. [R. 318-328].  The physical examination was normal as were the orthopedic and range of motion examinations. [R. 319].  The doctor's final impression was arthralgia (joint pain) and status post thyroid surgery. [R. 320].  He assigned exertional limitations of frequently lifting and carrying 20 pounds, occasionally 50 pounds, standing and/or walking about 6 hours in an 8-hour workday, no  limitations in sitting, pushing and/or pulling and no postural, manipulative, visual communicative or environmental limitations. [R. 321-328].

**The ALJ's Decision**

The ALJ determined Plaintiff's osteoarthritis, plantar fascitis and asthma are severe impairments. [R. 25].  Citing Dr. Smallwood's PRT form, portions of Dr. Rawling's report and portions of Dr. Hickman's report, the ALJ concluded Plaintiff's memory problems are not severe. [R. 25].  The ALJ also found Plaintiff did not appear to have had any cardiac difficulties in the past several years and cited Dr. Martin's August 16, 2002 treatment note as support for this finding.  He acknowledged Plaintiff's treatment for hypothyroid condition in 1999 but stated this did not appear to have had any serious consequence in regard to everyday functioning.[14] *Id.*

The ALJ summarized the podiatrist's findings regarding Plaintiff's plantar fascitis, heel spur syndrome and hallux valgus. [R. 25].  He noted Plaintiff's arthritis related complaints recorded by Dr. Rawlings and Dr. Dalessandro. *Id.*  He also addressed Dr. Krishnamurthi's report. [R. 26].

In determining that Plaintiff's impairments are not as severe as she alleges, the ALJ compared Plaintiff's testimony with the reports from Dr. Dalessandro and Dr. Krishnamurthi.  He assessed an RFC for lifting and/or carrying 50 pounds occasionally or 20 pounds frequently, for sitting, standing and walking 6 hours during an 8-hour workday, for (apparently unlimited) use of her hands and feet and for frequent climbing, balancing and kneeling. [R. 27].  The ALJ restricted  Plaintiff to a reasonably clean air environment because of asthma. [R. 27].

---

[14] Plaintiff does not challenge the ALJ's findings with regard to hypothryoidism.

**Treating Physician's Opinion**

A treating physician's opinion about the nature and severity of a claimant's impairments will be given controlling weight under certain circumstances. *See Castellano*, 26 F.3d at 1029. An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques;" and (2) "consistent with other substantial evidence in the record." *See Watkins v. Barnhart*, 350 F.3d 1297, 2003 WL 22855009, at *2 (10th Cir. Dec. 2, 2003) (In deciding how much weight to give the opinion of a treating physician, an ALJ must first determine whether the opinion is entitled to "controlling weight.").

In this case, Dr. Martin clearly qualifies as Plaintiff's long-term general medical care provider, treating her for colds, spider bites, blood pressure monitoring, etc. He also attended to her complaints of foot pain and muscle soreness and pain related to her osteoarthritis and degenerative joint disease. He was privy to the treatment regimen recommended and provided by the podiatrist and rheumatologist to whom he had referred Plaintiff. He was also copied on hospital records, x-ray reports, lab reports and the records generated by the physician treating Plaintiff's asthma. Thus, any opinion he had with regard to Plaintiff's functional limitations warranted controlling weight or at the very least, an explanation for the weight that it was accorded.

The ALJ barely mentioned Dr. Martin and this was only in the context of his finding that Plaintiff does not have severe "heart palpitations." [R. 25]. He pointed to a "normal" check-mark in the cardiovascular systems examination column of Dr. Martin's August 16, 2002 treatment record. [R. 25, 340]. The Court notes that the ALJ did not

also mention Dr. Martin's notation on this same treatment page that Plaintiff is "disabled" or that he had prescribed Zoloft.[15] *Id.* Nor did he mention the "abnormal" check-marks in the muscoskeletal column in other pages of Dr. Martin's treatment notes. [R. 120, 124, 194, 203, 501].

In his June 24, 2002 letter, Dr. Martin assessed significant functional limitations with regard to Plaintiff's abilities to reach, lift, grip, sit, stand, walk and bend and he opined Plaintiff would not be able to work a full 8-hour workday without having to elevate her legs several times during the day for 1-2 hours at a time to relieve pain and swelling. [R. 301]. The ALJ acknowledged the existence of this opinion during both hearings and even stated on the record that, with the limitations given by Dr. Martin, Plaintiff "would not be able to do very much in the way of work and work activities." [R. 583-584]. The ALJ opted not to present the VE with a hypothetical based upon Dr. Martin's opinion. [R. 584].

Because he omitted any reference whatsoever to Dr. Martin's opinion in his written decision, it appears the ALJ rejected it in its entirety. A treating physician's opinion may be rejected if it is brief, conclusory and unsupported by medical evidence. However, specific, legitimate reasons for rejection of the opinion must be set forth by the ALJ. *Frey v. Bowen,* 816 F.2d 508 (10th Cir. 1987); *Eggleston v. Bowen*, 851 F.2d 1244, 1246-7 (10th Cir. 1988) (if treating physician's progress notes contradict his

---

[15] Zoloft is used to treat depression, obsessive-compulsive disorder, panic attacks, posttraumatic stress disorder, and social anxiety disorder. It is also used to relieve the symptoms of premenstrual dysphoric disorder, including mood swings, irritability, bloating, and breast tenderness. MedlinePlus Drug Information on line: http://www.nlm.nih.gov/medlineplus/druginfo/medmaster/a697048.html.

opinion, it may be rejected). The ALJ in this case did not provide any reason, much less a specific, legitimate reason, for his rejection of Dr. Martin's opinion. This is error.

Additionally, the ALJ did not specify what weight he ultimately assigned the opinion of Dr. Martin. This too, is error. The ALJ's decision "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2p, 1996 WL 374188, at *5. This is a necessary finding in order for the Court to ascertain whether the ALJ's decision is based upon substantial evidence. *See Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir.2001) (court cannot meaningfully review ALJ's determination absent findings explaining weight assigned to treating physician's opinion).

The ALJ appears to have adopted the opinions of the consultative medical experts without explaining his rationale for concluding that their opinions were entitled to more weight than the opinion or the records of the treating physicians. [R. 26]. The treating physician's opinion is given particular weight because of his or her "unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations. " *Doyal,* 331 F.3d at 762 (quoting 20 C.F.R. §§ 416.927(d)(2)). The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. 20 C.F.R. §§ 404.1527(d)(1), (2) and 416.927(1), (2); SSR 96-6p, at *2. The ALJ erred in rejecting

13

the treating-physician opinion of Dr. Martin in favor of the opinion of one of the consultative physicians absent a legally sufficient explanation for doing so.

Although he offered no explanation for doing so, it also appears the ALJ adopted the clinical findings of Dr. Krishnamurthi over those found by the earlier consultative physician, Dr. Dalessandro. The ALJ's failure to explain the reasons for favoring one consultative physician's opinion over another's is also error. The ALJ is required to "evaluate every medical opinion" he receives, 20 C.F.R. § 404.1527(d), and to "consider all relevant medical evidence of record in reaching a conclusion as to disability." *Baker v. Bowen*, 886 F.2d 289, 291 (10th Cir.1989); *see also Kemp v. Bowen*, 816 F.2d 1469, 1476 (10th Cir.1987) (noting it is fact finder's responsibility to resolve genuine conflicts between contrary evidence).

This case must be reversed and remanded to the Commissioner in order to address the opinion of Plaintiff's treating physician, to conduct a proper evaluation of all the medical evidence, and to explain the weight he accorded each medical opinion in determining whether or not Plaintiff is disabled.

## Mental Impairments

The ALJ found Plaintiff has no severe mental impairment. [R. 25]. Plaintiff complains the ALJ failed to apply the "special technique" required at step two in determining whether or not a medically determinable mental impairment is severe. That process is set forth in the agency regulations for evaluation of mental impairments and requires consideration of all relevant evidence to obtain a longitudinal picture of [the

claimant's] overall degree of functional limitation." See 20 CFR §§ 404.1520a; 416.920a.  *Id.* §§ 404.1520a(c)(1); 416.920a(c)(1).[16]

The ALJ concluded that Plaintiff has no severe mental impairment and cited Dr. Smallwood's PRT and portions of the reports by the two agency psychologists as support for this finding. [R. 25].  However, the ALJ did not mention the portion of Dr. Rawlings' report where he indicated test results "did match her description of memory problems on her last job" or his diagnosis of pain disorder. [R. 143]. This diagnosis was corroborated by Dr. Hickman, who evaluated Plaintiff after conducting the additional tests recommended by Dr. Rawlings. [R. 311-317].  "[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects."  See *Threet v. Barnhart,* 353 F.3d 1185, 1190 (10th Cir.2003) (quoting *Clifton v. Chater,* 79 F .3d 1007, 1010 (10th Cir.1996)).

Upon remand, the Commissioner should re-examine all of Plaintiff's claimed mental impairments and conduct a proper analysis of her claimed mental impairments at step two. *See Cruse v. United States Dep't of Health & Human Servs.*, 49 F.3d 614, 617 (10th Cir.1995) ("When there is evidence of a mental impairment that allegedly prevents a claimant from working, the [ALJ] must follow the procedure for evaluating

---

[16] After first finding that the claimant has a severe mental impairment, the impairment is then rated by its effect on four functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3); 416.920a(c)(3). The ALJ is required to document his evaluation of these functional factors in the body of his decision, making specific findings as to the evidence relied upon and the degree of limitation in each of these areas, *id.* §§ 404.1520a(e)(2); 416.920a(e)(2).

15

mental impairments set forth in 20 C.F.R. § 404.1520a and the Listing of Impairments and document the procedure accordingly.").

### RFC Determination

As to Plaintiff's osteoarthritis, which the ALJ found to be a severe impairment, the ALJ's decision implies he determined Plaintiff suffered from some degree of pain but he failed to adequately address the level of pain he found Plaintiff to have, even though it was not disabling. The ALJ did not address Dr. Martin's June 24, 2002 letter or corresponding treatment records by Dr. Martin and Dr. Huettner when he discussed his RFC findings. Although the RFC determination is based upon all the evidence, not just the medical evidence, the ALJ must discuss the relevant medical evidence bearing upon his RFC assessment in some detail. See Social Security Ruling (SSR) 96-5p, 1996 WL 374183, at *5 ("[O]pinions from any medical source on issues reserved to the Commissioner must never be ignored. The adjudicator is required to evaluate all evidence in the case record that may have a bearing on the determination or decision of disability, including opinions from medical sources about issues reserved to the Commissioner.").

The ALJ also determined Plaintiff's plantar fascitis was a severe impairment at step two. [R. 25]. Although he did summarize Dr. Crotty's clinical findings, he did not explain how he factored those findings into his RFC assessment. Because the RFC which the ALJ ultimately assigned Plaintiff included standing, walking 6 hours of an 8-hour workday and unlimited use of the feet, the ALJ was required to explain the weight he accorded this evidence in reaching that assessment. *See Clifton*, 79 F.3d at 1010; *Hamlin v. Barnhart*, 365 F.3d 1208, 1215, 1219 (10th Cir.2004) ("An ALJ must evaluate

every medical opinion in the record.").[17]  Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is significantly probative." *Briggs ex rel. Briggs v. Massanari*, 248 F.3d 1235, 1239 (10th Cir. 2001) (further quotation omitted).

## Credibility Determination

The only medical evidence the ALJ compared with Plaintiff's testimony was the evidence provided by some of the consultative medical experts.  As discussed above, because the ALJ did not properly consider the medical evidence from Plaintiff's treating physicians and because he did not explain the reasons for his preference of some consultative expert opinions over those of other consultative experts, his weighing of Plaintiff's credibility against the medical evidence is infirm.  *See Hardman v. Barnhart*, 362 F.3d 676, 679 (10th Cir.2004) (ALJ's failure to inform in "meaningful, reviewable way" of how evidence was considered in credibility determination required reversal). Upon remand, after properly evaluating the medical evidence, the ALJ must revisit his credibility determination.

## Hypothetical Questions

Because this case is remanded to the Commissioner for reconsideration of the medical evidence under the proper guidelines and for re-evaluation of Plaintiff's RFC and credibility after such reconsideration, findings at subsequent steps in the evaluative sequence will also need to be revisited.

---

[17] Except for the environmental limitation, this RFC matches the RFC assessed by Dr. Krishnamurthi.  However, Dr. Krishnamurthi did not diagnose plantar fascitis or include any findings relating to plantar fascitis in his report.  Because the ALJ found Plaintiff's plantar fascitis was a severe impairment at step two, it appears he accepted Dr. Martin's and Dr. Crotty's diagnosis of plantar fascitis. He was therefore required to explain how he factored their clinical findings into the RFC.

## **Conclusion**

The ALJ ignored the June 24, 2002 letter written by Dr. Martin in determining the severity of Plaintiff's impairments, in his RFC assessment and in his credibility findings. The ALJ did not sufficiently explain the weight he accorded Dr. Crotty's clinical findings in determining Plaintiff's RFC and subsequent findings.  The ALJ also failed to explain how he resolved inconsistencies between the findings of the consultative medical experts in determining Plaintiff has no severe mental impairment.  Because the ALJ did not demonstrate that he had properly considered the medical evidence, the Court cannot say that the record contains substantial evidence to support the determination of the ALJ that Plaintiff is not disabled.   Accordingly, the decision of the Commissioner finding Plaintiff not disabled is REVERSED and REMANDED to the Commissioner for reconsideration.

Dated this 29th day of November, 2007.

_____
FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE